UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Mark L. Dove</u> and
<u>Kathleen M. Stavaski</u>,

     v.                                    Civil No. 15-cv-224-JL
                                        Opinion No. 2016 DNH 041
<u>The Bank of New York Mellon</u> and
<u>Select Portfolio Servicing, Inc.</u>

### MEMORANDUM ORDER

This case involves a challenge to a bank's authority to foreclose on a mortgaged property in light of the mortgage assignment, as well as a pair of contract-based theories of relief.  Plaintiffs Mark Dove and Kathleen Stavaski financed their home purchase through a mortgage.  Some six years after falling behind in their payments, and after multiple foreclosure sales were scheduled and cancelled, the plaintiffs filed a six-count complaint against the lending bank and loan servicer, alleging that defendant The Bank of New York Mellon[1] breached the mortgage contract and, under several theories, lacked authority to foreclose on their property.  They also allege that the Bank and Select Portfolio Servicing, Inc. ("SBS"), the loan servicer,

---

[1] This defendant's full name is The Bank of New York Mellon, as successor Trustee f/b/o holders of Structured Asset Mortgage Investments II Inc., Bear Stearns ALT-A Trust 2006-2, Mortgage Pass-Through Certificates, Series 2006-2.  For convenience, the court will refer to it as the Bank.

breached the covenant of good faith and fair dealing by attempting to foreclose instead of taking other routes to loss mitigation, such as modifying the plaintiff's loan or accepting a short sale of the property.  This court has jurisdiction over this matter under 28 U.S.C. § 1332 (diversity).

The defendants have moved to dismiss the plaintiff's complaint.  See Fed. R. Civ. P. 12(b)(6).  After considering the parties' written submissions,[2] and for the reasons discussed more fully below, the court grants the defendants' motion.

## I.   **Applicable legal standard**

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must state a claim to relief by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  In ruling on such a motion, the court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in the plaintiff's favor.  See, e.g., Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010).  The court "may consider not only

---

[2] Though it is the court's regular practice to hold oral argument on all dispositive motions, the parties agreed that oral argument on this motion was unnecessary.

the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009).

## II.  Background

The following factual summary adopts the approach described above.  In 2005, the plaintiffs purchased a house, financing it through a mortgage from CTX Mortgage.[3]  Mortgage Electronic Registration Systems, Inc. ("MERS") was designated the lender's nominee.  MERS then assigned the mortgage to the Bank and recorded the assignment in the appropriate registry of deeds on October 30, 2009.

A few months after the assignment, plaintiff Dove lost his job and the plaintiffs began to fall behind on their payments. They pursued loss mitigation efforts through JP Morgan Chase, who plaintiffs allege claimed to hold the note and mortgage at that time,[4] including an attempted short sale of the home in 2011, which fell through.

---

[3] Plaintiffs actually obtained two mortgages from CTX Mortgage to finance their home purchase.  Only the first of these mortgages is at issue in this action, however, so it is this mortgage and its accompanying note to which the court refers when it uses the terms "the mortgage" and "the note."

[4] Notably, plaintiffs never allege that Chase actually held the note and mortgage; only that it claimed to do so.  See Amended

In early 2013, the plaintiffs received a letter warning
them that the Bank was accelerating their loan.  The letter,
dated February 22, 2013, indicated that foreclosure proceedings
were being initiated on the Bank's behalf.  In early March, the
Bank scheduled and notified plaintiffs of a foreclosure sale.
Plaintiffs, in turn, demanded verification of the debt.  The
Bank's foreclosure counsel replied, enclosing copies of the
note, the mortgage, the mortgage assignment, and plaintiffs'
payment history, and informing plaintiffs that they could
contact Chase to discuss loan modification.  The same counsel
also produced the original note for inspection by plaintiffs'
then-counsel.

In September 2013, the Bank scheduled a foreclosure sale.
Around the same time, SPS -- which by then serviced the loan --
engaged plaintiffs in a discussion of foreclosure alternatives.
Plaintiffs pursued those alternatives, completing a loan
modification application and finding a cash buyer who was ready
to purchase the home through a short-sale.  SPS, the plaintiffs
allege, then interminably delayed both the loan modification and
short sale processes, and the Bank contributed to the delay of

---

Compl. ¶¶ 18-19.  Defendants, on the other hand, claim that
Chase serviced the loan on the Bank's behalf during this time
period.

the short sale, to the extent that both foreclosure alternative options fell through.

The plaintiffs sued the Bank in Grafton County Superior Court on May 28, 2015, asking the court to enjoin the Bank from foreclosing on the property, to declare that the Bank lacked power to foreclose, and to grant plaintiffs' attorneys' fees. The Bank removed the case to this court, see 28 U.S.C. § 1441, citing the court's diversity jurisdiction, and then moved to dismiss.  Plaintiffs amended their complaint, adding (1) SPS as a defendant, (2) a claim for breach of the implied covenant of good faith and fair dealing, and (3) a request for damages arising out of plaintiffs' claim for defendants' breaches of contract and the implied covenant of good faith and fair dealing.  Defendants again moved to dismiss.

III. **Analysis**

A. **Count I - Breach of contract (the Bank)**

The plaintiffs first allege that the Bank breached the mortgage contract when someone else -- not the Bank -- sent them an acceleration notice.  The mortgage contract provides: "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument," and provides the requisite content of that notice.  Defendants' Ex. B (document no. 10-3) ¶ 22.  The plain

5

language of Paragraph 22, the plaintiffs argue, requires the "lender" -- here, the Bank -- to send the notice.  The Bank claimed to hold the note and mortgage at the time the notice was sent.  Amended Compl. ¶ 61.  But, plaintiffs allege, Chase sent the notice.  Id. ¶ 60.  The Bank's failure to act in accordance with the plain language of Paragraph 22 by failing to send the notice itself, plaintiffs contend, constitutes breach of the agreement.

The plaintiffs' claim here fails.  First, contrary to the plaintiffs' argument, paragraph 22 does not require the lender, itself, personally, to send the notice.  It may provide notice through an agent.  See Galvin v. U.S. Bank Nat. Ass'n, No. CIV.A. 14-14723, 2015 WL 1014549, at *4 (D. Mass. Mar. 9, 2015). Further, the face of the notice makes clear that it was sent on the Bank's behalf.[5]  Defendants' Ex. D (document no. 10-5) at 1 ("We have been instructed to bring a foreclosure in the name of The Bank of New York Mellon, f/k/a/ The Bank of New York, as successor-in-interest to JPMorgan [sic] Chase Bank, N.A. as Trustee for Bear Stearns Asset Backed Securities, Bear Stearns ALT-A Trust, Mortgage Pass-Through Certificates, Series 2006-

---

[5] The notice and the mortgage itself, discussed infra, are sufficiently incorporated into the complaint that the court may consider them in deciding this motion.  See Rederford, 589 F.3d at 35.

2.").  Accepting the facts pleaded and permissible record evidence as true, the complaint does not state a breach of contract claim.  Accordingly, the court dismisses Count I.

**B.   Count II - Failure to produce the original note (the Bank)**

The plaintiffs also seek a declaration that the Bank lacks authority to foreclose because the Bank has not proven that it is the note-holder.  As this court has explained under nearly identical circumstances:

> [A] plaintiff cannot mount a challenge to a defendant's authority to foreclose simply by raising the possibility that the defendant lack[s] possession of the note secured by the mortgage they have tried to foreclose, because the pleading standard set forth in Federal Rule of Civil Procedure 8(a) requires more than a sheer possibility that a defendant has acted unlawfully.  Rather, to successfully state a claim challenging a defendant's standing to foreclose . . . a plaintiff must affirmatively allege . . . that the defendant lacks possession of the note.

Mason v. Wells Fargo Bank, 2014 DNH 136, 8 (internal quotations and citations omitted).  As in Mason, the plaintiffs here have not so alleged.  They carefully allege not that the Bank does not hold the note, but that it is unknown whether the Bank holds the note because the Bank has not produced the original note for inspection.  See Amended Compl. ¶ 64.  To the contrary, plaintiffs admit that (1) the Bank produced the "blue ink" note for inspection by plaintiffs' then-counsel in 2013, id. at ¶ 27,

and (2) that as of February 2015, in response to a letter from plaintiffs to the Bank's foreclosure counsel, Compl. (document no. 1-1) ¶ 10, "[d]efendants acknowledged that one of them possessed the original 'blue-ink' Note . . . ." Amended Compl. ¶ 10. These factual allegations underscore plaintiffs' failure to sufficiently allege that the Bank does not possess the promissory note in question here.[6]  See Mason, 2014 DNH 136, 9-10. Accordingly, Count II is dismissed.

**C.   Counts III and V - Alleged violations of the PSA (the Bank)**

Taking aim at a perceived weakness in the mortgage's assignment, the plaintiffs contend that the transfer of the note and mortgage to the trust for which the Bank is trustee does not comply with the trust's own Pooling and Service Agreement ("PSA") in two respects.  In Count III, plaintiffs allege that the note and mortgage were untimely transferred into the trust

---

[6] For purposes of resolving the relevant motion in Mason, the court assumed, without deciding, that "in order to foreclose on a mortgage, the party must hold the note which that mortgage secures . . . ." Id. at 8.  The court need not do so here.  As discuss infra Part III.D, recent guidance from the New Hampshire Supreme Court suggests that, at least in this circumstance, an agency relationship between the noteholder and mortgage holder evidenced by language in the mortgage naming the mortgagee as "nominee for lender and lender's successors and assigns" satisfies this requirement.  Castagnaro v. Bank of New York Mellon, No. 2014-0782, 2016 WL 302450, at *1 (N.H. Jan. 26, 2016).

for which the Bank is trustee.  Under the trust's PSA, plaintiffs allege, the transfer needed to happen no later than 90 days after March 31, 2006.  MERS did not assign the mortgage to the Bank until October 30, 2009, well after that deadline. Similarly, in Count V, plaintiffs allege that the trust's PSA required the note and mortgage to pass from the originator to the seller or sponsor, and then to the depositor, and finally to the issuer -- that is, the trust itself.  By assigning the mortgage directly to the Bank, plaintiffs argue, CTX Mortgage skipped the requisite intermediate steps.  Plaintiffs contend that either one of these acts of noncompliance with the PSA voids the transfer of the mortgage and note to the Bank.  And because the mortgage assignment is void, plaintiffs argue, the Bank lacks authority to foreclose.  Defendants move to dismiss these claims on the grounds that the plaintiffs lack standing to bring them.  The court agrees.

As this court very recently explained in response to a nearly identical argument, under New York law (which controls the trust), mortgagors lack standing to challenge the transfer of a mortgage to a trust that does not conform with the trust's PSA.  See Aho v. Bank of America, N.A., 2015 DNH 232, 6-8.  Such non-conformities render the assignment voidable, not void, and only a party to the PSA has standing to challenge the Bank's

possession of the mortgage.  Id. at 8.  Similarly, the transfers
here, if not in conformity with the PSA, are voidable but not
void; and plaintiffs, as non-parties to the PSA, "do[] not have
standing to challenge the [defendant's] possession or status as
assignee of the note and mortgage based on purported
noncompliance with certain provisions of the PSA."  Id. at 8
(quoting Wells Fargo Bank, N.A. v. Erobobo, 9 N.Y.S.3d 312, 313
(N.Y. App. Div. 2015)).

     Attempting to overcome this impediment to standing, the
plaintiffs argue that they are intended third-party
beneficiaries of the PSA, and thus have standing.  Certain
provisions of the PSA allow the parties to modify the
mortgagors' obligations under the loan and represent that the
various practices, including escrow deposits, comply with the
requisite laws and regulations.  See Ex. B at 723/1630 and
861/1630.  Plaintiffs allege that these provisions are intended
to benefit them, as non-parties.  But "[t]he intent to render a
non-party a third-party beneficiary must be clear from the face
of the PSA."  Rajamin v. Deutsche Bank Nat. Trust Co., No. 10
CIV. 7531 LTS, 2013 WL 1285160, at *3 (S.D.N.Y. Mar. 28, 2013),
aff'd, 757 F.3d 79 (2d Cir. 2014).  These generic assurances
that the trust will comply with the law do not make the

plaintiffs' status as a third-party beneficiary "clear." Cf.
id.

For these reasons, plaintiffs lack standing to challenge
the mortgage assignment under the PSA.  Accordingly, Counts III
and V must be dismissed.

### D.   Count IV - Lack of unity of the note and mortgage (the Bank)

In Count IV, the plaintiffs challenge the Bank's authority
to foreclose because, they claim, the Bank "cannot show that the
Note and Mortgage were transferred together throughout the life
of the loan." Amended Compl. ¶ 79.  This court has previously
rejected that theory in cases such as this, see Galvin v. EMC
Mortgage Corp., 2013 DNH 053, 17-19, and recent guidance from
the New Hampshire Supreme Court confirms this approach.

The mortgage here describes MERS as "a separate corporation
that is acting solely as a nominee for Lender and Lender's
successors and assigns."  Defendants' Ex. B (document no. 10-3)
at 1.  It further expressly grants MERS, as nominee to the
lender and its successors, power of sale and "the right: to
exercise any or all of [the interests in the property granted by
the borrower], including, but not limited to, the right to
foreclose and sell the Property . . . ." Id. at 3.  On the
basis of identical language, the New Hampshire Supreme Court

concluded that such provisions "demonstrate[d] the existence of an agency relationship between [the lender] and [the mortgagee]." Bergeron v. New York Community Bank, 168 N.H. 63, 121 A.3d 821, 826 (2015).  And because the mortgage also contemplated that both the lender and the mortgagee "could assign their interests . . . the defendant has the authority, as agent of the noteholder to exercise the power of sale." Id., 121 A.3d at 827.  In answering a question certified by the First Circuit Court of Appeals, the Court then clarified that such "an agency relationship between the noteholder and the mortgage holder does meet" any requirement that a foreclosing entity hold both note and mortgage, and that the "language in the mortgage naming the mortgagee 'nominee for lender and lender's successors and assigns' suffices on its own to show an adequate agency relationship." Castagnaro, 2016 WL 302450, at *1.

Under Bergeron and Castagnaro, the Bank, as assignee of the mortgage, appears also to have authority to enforce the mortgage as an agent for the lender.  The plaintiffs do not challenge the validity of the assignment, except to the extent that the assignment failed to comply with the trust's PSA -- a challenge that fails for the reasons discussed supra Part III.C. Accordingly, the plaintiffs have not plead facts sufficient to state a claim that the Bank lacks that authority to foreclose

because the note and mortgage were bifurcated, and Count IV must be dismissed.

### E.   Count VI – Breach of the covenant of good faith and fair dealing (both defendants)

Finally, plaintiffs claim that both defendants breached the covenant of good faith and fair dealing implied in the mortgage contract.  They invoke the third category of the breach of that covenant recognized in New Hampshire:  limitation of discretion in contractual performance.  See Birch Broadcasting, Inc. v. Capitol Broadcasting Corp., Inc., 161 N.H. 192, 230 (2009).  The mortgage, plaintiff contends, grants the defendants discretion to foreclose or to take some less drastic loss mitigation action, such as engaging in a short sale or modifying the plaintiffs' loan.  Defendants breached the implied covenant, plaintiffs argue, by exercising their discretion to foreclose instead of pursuing those other options.

As this court has explained, "'the duty of good faith and fair dealing ordinarily does not come into play in disputes' where 'the underlying contract plainly spells out both the rights and duties of the parties and the consequences that will follow from a breach of a specified right.'" Rouleau v. U.S. Bank, N.A., 2015 DNH 084, 9 (quoting Milford-Bennington R. Co., Inc. v. Pan Am Rys., Inc., 2011 DNH 206, 12).  This claim is

directly analogous to that raised in Rouleau.  Here, the
plaintiffs do not dispute that the note obligated the plaintiffs
to pay back the amount of the loan secured by the mortgage.  Nor
do they dispute that they defaulted in 2009.  As discussed
supra, the note specifically provides that a lender may
accelerate the loan in the event of default, provided sufficient
notice is given.  And, as in Rouleau, the mortgage contract here
spells out the lender's remedy in the event that plaintiffs
defaulted and failed to cure:  "Lender at its option may require
immediate payment in full of all sums secured by this Security
Instrument without further demand and may invoke the STATUTORY
POWER OF SALE and any other remedies permitted by Applicable
Law."  Defendants' Ex. B. at 13.  As this court reasoned in
Rouleau, while the agreement "does confer some discretion on
[the defendants] in deciding whether or not to proceed with
foreclosure, it is not so lacking in clarity as to provide the
fodder for a successful claim for breach of the implied duty of
good faith and fair dealing."  2015 DNH 084, 10.  The court
therefore dismisses Count VI.

## IV.   <u>Conclusion</u>

For the reasons set forth above, defendants' motion to dismiss the complaint[7] is GRANTED.  The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:     February 29, 2016

cc:  Stephen T. Martin, Esq.
     Peter G. Callaghan, Esq.

_____

[7] Document no. 10.